# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 30, 2025          Decided July 21, 2026

No. 25-7007

TITAN CONSORTIUM 1, LLC,
APPELLEE

v.

ARGENTINE REPUBLIC,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02250)

---

*Rathna J. Ramamurthi* argued the cause for appellant. With her on the brief was *Carmine D. Boccuzzi, Jr.*

*Matthew D. McGill* argued the cause for appellee. With him on the brief were *Matthew S. Rozen*, *Thomas Moore*, and *Ashley Keller*. *Amy R. Upshaw* entered an appearance.

Before: MILLETT, WILKINS, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  In 2008, after years of tightening regulations on the airline industry, Argentina took over several private airlines from three Spanish investment companies.  The investors, alleging that they had been the victims of expropriation in violation of a bilateral international treaty between Argentina and Spain, took Argentina to arbitration.

The investors applied to arbitrate at the International Centre for Settlement of Investment Disputes ("Centre").  The Convention on the Settlement of Investment Disputes between States and Nationals of Other States established the Centre as an international arbitration forum to resolve investment disputes between private individuals and sovereign nations.  The Centre is affiliated with the World Bank, and is located at the Bank's headquarters in Washington, D.C.

After a lengthy arbitration process, the Centre's tribunal awarded the investors over $320 million from Argentina.  Two years later, the Centre's internal appellate committee affirmed the award and added more than $1 million in additional costs.

The investors sold their title to this award to Titan Consortium 1, LLC.  Titan petitioned the district court for enforcement of the award just over four years after the initial award issued.  The district court denied Argentina's motion to dismiss and entered summary judgment in Titan's favor enforcing the award.

Argentina appeals solely on the ground that Titan's petition was untimely.  Because 22 U.S.C. § 1650a, the federal law implementing the Convention, lacks a statute of limitations, this court must decide what statute of limitations to apply.  Argentina urges the application of the three-year statute of limitations in the Federal Arbitration Act or, in the alternative, the District of Columbia's three-year catchall

statute of limitations. Titan argues that the district court correctly applied the District's twelve-year statute of limitations for the enforcement of money judgments issued by courts within the District of Columbia, D.C. Code § 15-101.

Because D.C. Code Section 15-101 provides the closest parallel to Section 1650a, we affirm the district court's holding that D.C.'s twelve-year statute of limitations is the appropriate limitations period to borrow, making Titan's enforcement action timely.

**I**

**A**

The Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, commonly known as the "Washington Convention," entered into force on October 14, 1966. I ICSID, HISTORY OF THE ICSID CONVENTION 10 (1970); *see* Washington Convention art. 68(2), *opened for signature* March 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159.

Currently, 166 countries have signed the Washington Convention and 158 of those—including Argentina, Spain, and the United States—have officially deposited their instruments of ratification. *Database of ICSID Member States*, ICSID, https://perma.cc/6QCX-RSDM. Those deposits make the Convention legally binding on all the parties in this case. Washington Convention art. 68(2).

The Washington Convention's purpose is to promote private investment in economically developing countries by providing private investors a legal avenue to protect their assets. S. EXEC. DOC. NO. 89-2, at 6 (2d Sess. 1966); *see also*

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017) ("[T]he 'immediate origins' of the Convention stem from the period between 1955 and 1962, when the 'retreat of colonialism' quickly increased the number of developing countries.") (quoting ANTONIO R. PARRA, THE HISTORY OF ICSID 11 (2012)).  Because the International Court of Justice is available only for sovereigns to bring suit against each other, the Washington Convention created a tribunal for private individuals to bring arbitral disputes against foreign sovereigns, and *vice versa*.  S. EXEC. DOC. NO. 89-2, at 6.  With access to such an avenue for redress, private investors had reassurance that a country could be held to the terms of international investment treaties.  *Id.*; *Mobil Cerro Negro*, 863 F.3d at 100.

The Washington Convention also established the baseline rules for the Centre's arbitral tribunal ("Tribunal").  *See* Washington Convention arts. 36–63.  Should a party wish to appeal an award issued by the Tribunal, it must go through an "annulment" procedure in front of a three-member "Annulment Committee," which serves as an internal appellate court with limited review powers.  *See id.* arts. 52, 53; *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 515 (D.C. Cir. 2023).

Importantly for the present case, though an award issued by the Tribunal is binding on the parties, the Centre has no power to enforce the awards.  Instead, as relevant here, Article 54 of the Washington Convention states:

> (1)  Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State.  A Contracting State

with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state.

\* \* \*

(3) Execution of the award shall be governed by the laws concerning the execution of judgments in force in the State in whose territories such execution is sought.

Washington Convention art. 54.

Congress adopted 22 U.S.C. § 1650a to govern the enforcement of Washington Convention arbitral awards in federal courts. *Valores Mundiales*, 87 F.4th at 516; 22 U.S.C. § 1650a. That statute provides, in relevant part:

The pecuniary obligations imposed by \* \* \* an award [by the Tribunal] shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

22 U.S.C. § 1650a(a).

**B**

The original dispute in this case involved the Spanish companies Teinver S.A., Transportes de Cercanías S.A., and Autobuses Urbanos del Sur S.A. (collectively, "Claimants"), which had invested in Argentina's airline industry in the early

2000s. J.A. 30–31, 60–63. Over the ensuing decade, national policies and politics, including limits on the price of airfares and collective actions by air transportation unions, led to a decrease in the value of those investments. *See* J.A. 353–359. Ultimately, Claimants felt compelled to sell their interests in the airlines to Argentina for what they described as a "lowball" offer. J.A. 353; *see also* J.A. 296–297.

In December 2008, Claimants submitted to the Tribunal a request for arbitration against Argentina that sought redress for the harm to their investments allegedly caused by Argentina's unlawful expropriation of the private airlines. *See* J.A. 30, 60–63. Claimants contended that the expropriations violated the 1991 bilateral investment treaty between Argentina and Spain. J.A. 30.

On July 21, 2017, after a lengthy arbitration process, the Tribunal awarded Claimants $320,760,000, plus legal fees, costs, and interest. J.A. 19, 418, 425. Argentina requested review and annulment of the award, but the Annulment Committee affirmed the award in May 2019, and ordered that another $1,017,512 be awarded to Claimants for costs incurred during the annulment proceeding. J.A. 572, 580, 658.[1]

---

[1] The Centre's Secretary-General granted a "provisional[] stay" pursuant to the Centre's procedural rules when Argentina requested annulment in November 2017. J.A. 580. The record does not disclose whether or when that stay was lifted, and the parties could not speak to this at oral argument, *see* Oral Arg. Tr. 4:15–5:2, 21:9–24, 25:11–15. Though a "provisional stay" of enforcement of an award lasts only 30 days after an Annulment Committee has been appointed, *see* Rules of Procedure for Arbitration Proceedings, Rule 54(2), Argentina asked for a stay of enforcement until after the appeal was decided, J.A. 580. So it is possible the Annulment Committee granted a stay throughout the appeal. Because we hold

Claimants subsequently assigned their title to the final award (the initial award plus the additional sum from the Annulment Committee) to Titan Consortium 1, LLC.  J.A. 8.

Titan filed a petition to enforce the award in the United States District Court for the District of Columbia, J.A. 1–13, in August 2021, which was four years and a month after the Tribunal had issued its judgment, *see* J.A. 19.  Argentina moved to dismiss the petition as untimely, arguing that a three-year statute of limitations applied, and so Titan's petition was untimely.  *See* Argentina's Mot. to Dismiss, ECF No. 12 at 4–8.

The district court denied the motion, holding that Titan's petition was timely because the twelve-year statute of limitations provided in D.C. Code Section 15-101 controls. *Titan Consortium 1, LLC v. Argentine Republic*, No. 21-CV-2250, 2024 WL 3858821, at *1 (D.D.C. Aug. 19, 2024).

Titan then moved for summary judgment, Titan's Mot. for Summ. J., ECF No. 25, which the district court granted, *Titan Consortium 1, LLC v. Argentine Republic*, No. 21-CV-2250, 2024 WL 5056349, at *1 (D.D.C. Dec. 10, 2024).  The district court entered judgment in the amount of $390,907,115.55, plus post-judgment interest.  J.A. 731.

Argentina filed a timely appeal.  Argentina challenges only the district court's decision to apply D.C.'s twelve-year statute of limitations and its consequent ruling that Titan's petition to

---

that a twelve-year statute of limitations applies, Titan's petition was timely regardless of the length of the stay or its effect, if any, on the running of the statute of limitations in federal court.

enforce the arbitral award was timely. *See* Argentina Opening Br. 1–2.

## II

The district court had jurisdiction under 28 U.S.C. §§ 1330(a), 1605(a)(6). *See NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100, 1105 (D.C. Cir. 2024) ("[D]istrict courts have jurisdiction to enforce" Washington Convention awards "under the [Foreign Sovereign Immunities Act]'s arbitration exception[.]"). This court has jurisdiction under 28 U.S.C. § 1291.

We review both the denial of a motion to dismiss on statute of limitations grounds and the grant of summary judgment *de novo*. *Federal Law Enforcement Officers Ass'n v. Ahuja*, 62 F.4th 551, 557 (D.C. Cir. 2023). Because the question of which statute of limitations to apply is an issue of law, we review that decision *de novo* as well. *See Cephas v. MVM, Inc.*, 520 F.3d 480, 483 (D.C. Cir. 2008).

## III

The only question before this court is which statute of limitations applies to motions to enforce Washington Convention arbitral awards under Section 1650a. The parties propose three different options. Titan urges us to affirm the district court's holding that the twelve-year statute of limitations in D.C. Code Section 15-101 governs. Titan Br. 13. Argentina, on the other hand, argues that a three-year limitations period governs under either the Federal Arbitration Act, 9 U.S.C. § 207, or a catchall provision in the D.C. Code, D.C. Code § 12-301(8). Argentina Opening Br. 11, 24–25.

When a federal statute creates a cause of action but lacks a statute of limitations, like Section 1650a does, "we do not ordinarily assume that Congress intended that there be no time limit on actions at all[.]" *Emory v. United Air Lines, Inc.*, 720 F.3d 915, 931 (D.C. Cir. 2013) (quoting *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)). Instead, courts "borrow" the most comparable limitations period identified. *Stafford v. George Washington Univ.*, 56 F.4th 50, 52 (D.C. Cir. 2022) (quotation marks omitted).

The default rule is to turn to state law to find "the most closely analogous statute of limitations[.]" *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989) (quotation marks omitted); *see also Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016) (*per curiam*) ("[C]ourts generally borrow [a statute of limitations] from an analogous state cause of action, provided that the state limitations period is not inconsistent with underlying federal policies.") (quotation marks omitted); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 743–744 (D.C. Cir. 1995) ("We therefore look for an appropriate statute of limitations in the law of the District of Columbia.").

That default rule is longstanding. "Since 1830, 'state statutes have repeatedly supplied the periods of limitations for federal causes of action' when the federal legislation made no provision[.]" *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33–34 (1995) (quoting *Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–704 (1966)).

From among the three options proposed by the parties, D.C. Code Section 15-101's twelve-year statute of limitations for the enforcement of money judgments issued within the District is the appropriate limitations period to borrow. In addition to the strong thumb on the scale in favor of applying a

D.C. law analogue, *see Reed*, 488 U.S. at 323; *North Star Steel*, 515 U.S. at 33–34, that time limit comports most closely with the plain meaning of Section 1650a and supporting context from the Washington Convention. Further, neither the Federal Arbitration Act nor the D.C. Arbitration Act fits the bill given the important and intentional differences between the New York Convention and the Washington Convention and their implementing legislation, and the D.C. Arbitration Act's lack of a statute of limitations itself.

## A

D.C. Code Section 15-101, with its twelve-year limitations period, provides the closest D.C. law analogue to Section 1650a. That is because Section 15-101 governs the enforcement of money judgments on terms that parallel the full faith and credit afforded to state court judgments, which is what Section 1650a and the Washington Convention require.

## 1

Section 1650a provides that Washington Convention arbitral awards must be enforced in the same manner as final judgments of States. Specifically, Section 1650a requires that "[t]he pecuniary obligations imposed by" a Washington Convention arbitral award issued by the Centre "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

That language mirrors Article 54 of the Washington Convention, which states: "Each Contracting State shall * * * enforce the pecuniary obligations imposed by [a Centre] award within its territories *as if it were a final judgment* of a court in that State." Washington Convention art. 54(1) (emphasis

added).  At the United States's urging, the Convention's framers added to Article 54 that a country with a federal system "may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state[,]" Washington Convention art. 54(1).  *See* II-2 ICSID, HISTORY OF THE ICSID CONVENTION 889, 900–904 (1970); 2 SCHREUER'S COMMENTARY ON THE ICSID CONVENTION 1495–1496 (Stephan W. Schill et al. eds., 3d ed. 2022).

D.C. Code Section 15-101 fits that bill.  It establishes a twelve-year limitations period for the enforcement of "every final judgment or final decree for the payment of money" issued by a local or federal court within the District of Columbia.  D.C. Code § 15-101(a).  That is, Section 15-101 provides for enforcement of the same types of "pecuniary obligations" as those covered by Section 1650a.

That conclusion is reinforced by Section 1650a's requirement that federal courts afford Tribunal awards the same "full faith and credit" as that afforded to state court judgments.  That full faith and credit language is borrowed from 28 U.S.C. § 1738, "which governs the enforcement of state court judgments in federal courts[,]" *Valores Mundiales*, 87 F.4th at 518, again pointing us towards a state statute governing the enforcement of judgments.

Similarly, under Section 1738, the role of an enforcing court is narrow.  An enforcing court may not substantively review or decline to enforce a judgment on the basis of public policy or disagreement with how the other court applied the law. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 232–234 (1998).

12

So too for D.C. Code Section 15-101. Its text provides that a judgment issued in a court within the District "*is* enforceable"—not may be enforceable—once a court has issued an order executing the judgment. D.C. Code § 15-101(a) (emphasis added); *see also Adkins Ltd. P'ship v. O St. Mgmt., LLC*, 278 A.3d 106, 112 (D.C. 2022) (describing the process of enforcement under Section 15-101 as "enforc[ing] * * * a recorded money judgment"). Section 15-101 lacks the more expansive judicial review powers seen elsewhere in the D.C. Code, such as Section 15-364, which permits a reviewing court to reject recognition of a foreign court's final judgment for lack of fair notice, fraud, and matters "repugnant to the public policy of the District of Columbia or of the United States[.]" D.C. Code § 15-364(b), (c). Meanwhile, the D.C. Court of Appeals has warned against reading in "limitation[s] [on enforcement] not expressed in the text of Section 15-101(a)[.]" *Czajka v. Holt Graphic Arts, Inc.*, 310 A.3d 1051, 1060 (D.C. 2024) (*en banc*). All that is why courts enforcing judgments under Section 15-101 do so in a *pro forma* manner, checking to ensure only that the twelve-year statute of limitations has been met. *See, e.g.*, *id.* at 1059–1062; *Massey v. Massey*, 210 A.3d 148, 151–154 (D.C. 2019); *Dickey v. Fair*, 768 A.2d 540, 541 (D.C. 2001); *Padgett v. Padgett*, 472 A.2d 849, 851 (D.C. 1984).

That framework tracks with the expressly limited role a federal court is to play under Section 1650a, which is merely to "enforce[]" an award rather than to substantively review its legal merits. 22 U.S.C. § 1650a(a); Washington Convention art. 54(1); *see also Valores Mundiales*, 87 F.4th at 518 ("Searching re-examination of [Washington Convention] awards by enforcement courts would be contrary to the Convention's central purpose of ensuring a neutral framework for dispute resolution."); *id.* at 515 ("[Member] states' courts are thus not permitted to examine a[] [Washington Convention]

award's merits, its compliance with international law, or the * * * [T]ribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award.") (quoting *Mobil Cerro Negro*, 863 F.3d at 102).

Because federal courts already are required to provide full faith and credit to state court judgments, 28 U.S.C. § 1738; *see also* U.S. CONST. Art. IV, § 1, looking to the state (or District) law that governs the enforcement of money judgments maps closely onto what Section 1650a and Article 54 of the Washington Convention require. Further, because Section 1650a speaks to the enforcement only of money judgments, not of equitable relief, the District's provision for the enforcement of *money* judgments provides an on-point statutory analogue. *See* 22 U.S.C. § 1650a(a); *see also* Washington Convention art. 54(1); 2 SCHREUER'S COMMENTARY at 1495–1496 ("The obligation to enforce extends only to the pecuniary obligations imposed by the award.").

**2**

Argentina objects that D.C. Code Section 15-101 is not on point because it applies only to money judgments issued by the United States District Court for the District of Columbia and the Superior Court of the District of Columbia, not to judgments issued by other States and federal territories. *See* Argentina Opening Br. 28–29; D.C. Code § 15-101(a).

Argentina is correct that, when a litigant petitions a D.C. court to enforce an out-of-state judgment, a different D.C. Code provision governs: D.C. Code § 12-307. Section 12-307, however, has no statute of limitations of its own. Instead, courts look to the law of the State whose judgment is being enforced to identify the appropriate statute of limitations.

As both parties agree, that Code provision will not work for Washington Convention awards because there is no rendering State with its own limitations period to borrow. *See* Argentina Opening Br. 28–29; Titan Br. 23.

Nonetheless, Argentina persists in arguing that, because D.C. Code Section 15-101 enforces only money judgments issued by courts within the District and not from other States, the concept of full faith and credit is irrelevant to the statute. Argentina Opening Br. 28–29. That argument ignores what federal courts are doing when they enforce a judgment pursuant to the terms of Section 15-101: They are affording a D.C. judgment full faith and credit. *See Carr v. District of Columbia*, 646 F.2d 599, 602 (D.C. Cir. 1980) (holding that there is "no sound reason for denying full credit to * * * District of Columbia courts"); *cf. Hurd v. District of Columbia*, 864 F.3d 671, 679 (D.C. Cir. 2017) ("The federal full faith and credit statute requires federal courts to give a D.C. court's decision 'the same full faith and credit' as a D.C. court would.") (quoting 28 U.S.C. § 1738).

Argentina points to the phrase in Section 1650a(a) requiring that arbitral awards be treated the same as if from "one of the several States," which is not how Section 15-101 operates. Argentina Opening Br. 27–28. According to Argentina, because the District of Columbia is not a State, a D.C. Code provision is not an appropriate analogue to apply to Section 1650a. *Id.*

That proves too much. The Tribunal's arbitral awards will never be the awards of state "court[s] of general jurisdiction[,]" so there is no reason to require mimicry of that language in the relevant statute of limitations. 28 U.S.C. § 1650a(a). The language from Section 1650a(a) on which Argentina relies

operates not as a wooden precondition to enforcement, but as a legal measure of the judicial respect that must be accorded Tribunal judgments and the full and faithful enforcement to be granted to them. That is, federal courts must treat them "as if" they were state court judgments. *Id.*

D.C. Code Section 15-101 does just that—it treats covered judgments as if they were state court judgments subject to full faith and credit as a matter of statutory and constitutional law. Indeed, because the Washington Convention recognizes that the "seat of the Centre" will be located at the World Bank's headquarters in Washington, D.C., *see* Washington Convention art. 2, and most Washington Convention arbitration has historically occurred in the District, it would be passing strange for Congress to have intended in Section 1650a to preclude the Tribunal awards' enforcement in the very jurisdiction where they are issued.

That leaves D.C. Code Section 15-101 as the closest, albeit imperfect, statute of limitations analogue. And that is sufficient. The Supreme Court has held that the borrowed state law need not be a perfect fit, as long as it is the best of the options before the court. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 147 (1987) ("[T]he mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations[.]"); *DelCostello*, 462 U.S. at 171 ("We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods.") (citations omitted).

For all those reasons, D.C. Code Section 15-101 is the closest analogue for the enforcement of a Washington Convention arbitral award in this jurisdiction.

**B**

Argentina argues that the three-year limitations period in Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207, or whatever limitations period attaches to D.C. Code § 16-4425 should apply to award enforcement under Section 1650a. Argentina Opening Br. 10, 24. Neither of those statutes is on point.

**1**

Argentina proposes that we apply the three-year limitations period from Section 207 of the Federal Arbitration Act. But we can look to a federal statute as the source of a limitations period only in the "rare case" when: (a) the "federal law clearly provides a closer analogy than available state statutes," *and* (b) "the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005); *Reed*, 488 U.S. at 324 (quoting *DelCostello*, 462 U.S. at 172). Neither condition is met here.

**a**

Section 207 of the Federal Arbitration Act provides:

Within three years after an arbitral award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] is made, any party to the

> arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.

9 U.S.C. § 207.  That provision utterly fails as an analogue to Section 1650a for three reasons.

*First*, and most saliently, Section 1650a explicitly rejects application of the Federal Arbitration Act:  "The Federal Arbitration Act (9 U.S.C. 1 et seq.) *shall not apply* to enforcement of awards rendered pursuant to the [Washington] convention."  22 U.S.C. § 1650a(a) (emphasis added).  That is a full and complete answer to Argentina's argument.

Argentina asks us to cast that express statutory directive aside because Section 207 was added to the Arbitration Act after Section 1650a was adopted.  Argentina Opening Br. 21.  That points to the opposite conclusion.  We take Congress at its word when it said the Federal Arbitration Act in full, from Section 1 through all that follows ("et seq."), has no role to play under Section 1650a.  If Congress changed its mind when it added Section 207 to the Federal Arbitration Act, it would have said so.  It did not.

Quite the opposite, Congress picked a different "Convention" to reference in Section 207, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, commonly known as the "New York Convention."  *See* 9 U.S.C. §§ 201, 207; Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.  Congress, in other words, textually determined to which international arbitral convention Section 207 would apply.  And it is not the Washington Convention.

*Second*, Congress linked Section 207 and the New York Convention together—and omitted the Washington Convention—for a reason. Article V of the New York Convention permits a district court to review an arbitral award on certain procedural and substantive grounds such as lack of proper notice, improper composition of the arbitral panel, and public policy conflicts. New York Convention art. V. The Federal Arbitration Act incorporates this review, providing that a reviewing court may refuse to confirm an award based on "one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207.

That type of review, however, is forbidden under Section 1650a, which confines federal courts to direct enforcement. 22 U.S.C. § 1650a(a). That makes sense because the Washington Convention provides for a mandatory internal appeal to the Centre's Annulment Committee, *see* Washington Convention art. 52, to conduct the kind of review that Section 207 and the New York Convention leave to district courts, *see* 9 U.S.C. § 207; New York Convention art. V. *See Valores Mundiales*, 87 F.4th at 520 ("By removing [Washington Convention] awards from the FAA's purview, Congress * * * reduc[ed] the scope of judicial review of [Washington Convention] awards below even the extremely limited review available under the FAA.") (quotation marks omitted).

*Third*, the legislative history of the enactment of Section 1650a and the *travaux préparatoires* of the Washington Convention—its drafting history—further caution against conflating the Washington and New York Conventions for statute of limitations purposes.

Though the United States did not ratify the New York Convention until 1970, *see Contracting States*, New York

Convention, https://perma.cc/CTZ2-BNQR, the framers of Section 1650a were keenly aware in 1966 of the existence of the New York Convention and the Federal Arbitration Act, and were on notice of the material differences compared to the Washington Convention. For example, the Treasury Department's General Counsel commented to both Senate and House Committees that: "The Federal Arbitration Act is not an appropriate instrument for enforcing arbitral awards rendered pursuant to the [Washington] convention." *Convention on the Settlement of Investment Disputes: Hearing on H.R. 15785 Before the H. Comm. on Foreign Affs., Subcomm. on Int'l Orgs. and Movements*, 89th Cong. 4 (1966) ("H.R. 15785 Hearing") (statement of Fred B. Smith, Gen. Counsel, Dep't of Treasury); S. REP. NO. 89-1374, at 4 (1966). The General Counsel emphasized the differing roles of an enforcing court under the two regimes. H.R. 15785 Hearing at 4–5; S. REP. NO. 89-1374, at 4. The State Department's Deputy Legal Advisor similarly underscored these dissimilarities before the House Subcommittee. H.R. 15785 Hearing at 10–11 (statement of Andreas F. Lowenfeld, Deputy Legal Advisor, Dep't of State).

In addition, the framers of the Washington Convention specifically rejected incorporating Article V of the New York Convention—the very article that Section 207 of the Federal Arbitration Act implements. As the Washington Convention chairman explained, "if enforcement of awards was to be governed by rules similar to those set forth in the New York Convention," the next draft of Article 54 should "eliminate the provisions for annulment under the Convention since otherwise a double set of appeals might be created." II-2 HISTORY OF THE ICSID CONVENTION at 888. As the plain text of the Washington Convention shows, the framers then rejected the New York Convention path and preserved the Annulment Committee as the sole source of review for Tribunal arbitral

awards. *See id.* at 885, 888, 926–928; *see also* SCHREUER'S COMMENTARY at 1499–1500 ("During the [Washington] Convention's preparation, the principle of finality of awards in the context of their enforcement was by no means uncontested and gave rise to extensive discussion[,]" culminating with a rejection of the New York Convention and its review for public policy.).

In short, adopting Section 207's limitations period as an appropriate analogue would require far more contortion of Section 1650a's plain text, disregard of the narrow role it leaves for enforcing courts, and imperviousness to historical context than the law allows.

**b**

Neither do any compelling federal policy reasons or practicalities of litigation make Section 207 "a significantly more appropriate vehicle" than D.C. Code Section 15-101. *Reed*, 488 U.S. at 324 (quotation marks omitted).

Argentina argues that uniformity in implementation counsels in favor of having a single federal statute of limitations period for all Washington Convention enforcement litigation. Argentina Opening Br. 14–18. Congress already made the contrary policy judgment when it chose in Section 1650a to omit a single, uniform limitations period *and* directed that award enforcement follow the varied paths allowed under the money-judgment enforcement schemes of more than 50 jurisdictions.

To be sure, as Argentina notes, Congress vested jurisdiction over Washington Convention enforcement actions exclusively in the federal courts. Argentina Opening Br. 16–17 (citing 22 U.S.C. § 1650a(b)). That more likely reflects

congressional comity concerns about where foreign sovereigns would litigate than a hidden desire for uniformity that Congress textually eschewed.

Beyond that, Argentina's concerns about a lack of uniformity appear to be more theoretical than practical. Washington Convention enforcement litigation against a foreign sovereign always may be brought in the United States District Court for the District of Columbia under the Foreign Sovereign Immunities Act. 28 U.S.C. § 1391(f)(4). In addition, as Argentina explains, Washington Convention "arbitrations frequently involve neither a U.S. national as claimant nor the United States as respondent," and thus "there often will be no substantive nexus between" a Washington Convention "award and any U.S. state." Argentina Opening Br. 23 (emphasis omitted). That means that the District of Columbia often is the *only* venue available to non-sovereign litigants. *See* 28 U.S.C. § 1391(f).

Nor is the District's twelve-year limitations period for enforcement actions an outlier compared to other statutes of limitations across the country. As of 2025, thirteen States had statutes of limitations for the enforcement of money judgments of twenty or more years, and twenty-one States had statutes of limitations of ten to fifteen years. *See Westlaw 50 State Statutory Survey: Enforcement of Judgments*, Thomson Reuters (2025).

Finally, the practicalities of litigation weigh in favor of a longer statute of limitations period than the three years provided in Section 207 because the Annulment Committee review process under the Washington Convention would often consume most if not all of that period.

Where review of an arbitration award will occur in district court, a three-year limitations period is workable because parties can proceed directly from the arbitral tribunal to federal court. That short timeframe does not work well for the Washington Convention, however, because parties cannot go to court until after they pursue review with the Centre's Annulment Committee. As the multi-year review process in this case illustrates, Annulment Committee review could leave little (if any) time for filing an enforcement action, which would leave the prevailing party at substantial risk of having an unenforceable award at the end of the arbitral process. *See* ICSID, UPDATED BACKGROUND PAPER ON ANNULMENT 28–29 (2024) (noting that, from 2016 to 2023, the average time from annulment application to issuance of the decision was 28 months). It is not this court's role, especially in a matter touching upon international relations, to adopt such a self-defeating limitations period in the face of Congress's express directive not to use any part of the Federal Arbitration Act to enforce the Washington Convention.[2]

Argentina argues that a party seeking enforcement could file an enforcement action in district court in parallel with its annulment action. Argentina Opening Br. 31–32. Perhaps.

---

[2] That the Annulment Committee can, in its discretion, stay enforcement of the arbitral award is beside the point. Nothing in Section 1650a suggests that Congress intended, as a practical matter, to outsource the effective enforcement of Washington Convention awards to the Annulment Committee's discretionary and unreviewable stay decisions. *See* UPDATED BACKGROUND PAPER ON ANNULMENT at 21–22. Nor is it clear whether and how a stay issued by the Annulment Committee would affect the running of a statutory limitations period. *See Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 388 n.17 (S.D.N.Y. 2012), *aff'd sub nom. Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72 (2d Cir. 2013).

But that action would face a substantial risk of being dismissed for lack of ripeness or, possibly, on international comity grounds, *cf. Mujica v. AirScan Inc.*, 771 F.3d 580, 598–599 (9th Cir. 2014). Anyhow, requiring duplicative enforcement efforts and burdening federal courts' dockets with premature litigation hardly commends Section 207 as the better analogue.

**2**

Argentina separately proposes that the D.C. Arbitration Act—D.C. Code Section 16-4425—is a better source for the relevant statute of limitations than D.C. Code Section 15-101. Argentina Opening Br. 24–25. While the title "Arbitration Act" certainly sounds helpful, and a D.C. analogue is favored over a federal one, that is all Argentina's argument has going for it.

The chief problem with applying D.C. Code Section 16-4425's limitations period is that it does not have one. So Argentina's proposal boomerangs us right back to where we started—trying to discern the best statute of limitations to import from some other provision.

On top of that, the D.C. Court of Appeals has never determined what limitations period governs under D.C. Code Section 16-4425. So adopting Argentina's argument would launch us into resolving a novel issue of District law. The answer is not obvious since other parts of the D.C. Arbitration Act establish 90-day limitations periods for different aspects of the arbitration scheme. *See* D.C. Code § 16-4423(c) (setting a 90-day period for movants to file a motion to vacate); *id.* § 16-4424(a) (providing a 90-day limit on motions for modification or correction of an award). Those provisions could mean either that a 90-day limitations period should be read into Section 16-4425, or that the D.C. Council consciously chose not to have

any limitations period at all for enforcement actions. The former reading would be unworkable for the Washington Convention because of the delay associated with its internal appeals process, and the latter reading would be of no help to Argentina.

What Argentina's argument really comes down to is that it wishes to apply the three-year statute of limitations found in D.C.'s "catchall" statute—D.C. Code § 12-301(8)—as the best parallel to Section 1650a. Argentina Opening Br. 25. That provision establishes a three-year statute of limitations for laws in "which a limitation is not otherwise specially prescribed[.]" D.C. Code § 12-301(8).

Needless to say, if we must play matchmaker for Section 1650a's specific money-judgment enforcement provision, D.C.'s own money-judgment enforcement provision looks a lot more promising than a generic catchall provision.

On top of that, borrowing the three-year catchall limitations period by way of D.C. Arbitration Act Section 16-4425 brings us right back to the same problems from which Section 207 of the Federal Arbitration Act suffers.

To start, a three-year period cuts the timing unworkably close given the common length of the Centre's internal appeals process. *See* UPDATED BACKGROUND PAPER ON ANNULMENT at 28–29.

Further, the D.C. Arbitration Act parallels the New York Convention and Section 207 of the Federal Arbitration Act in that it permits a court to undertake some review before confirming an award, such as whether a valid agreement to arbitrate existed, D.C. Code § 16-4406(b), whether an award "was procured by corruption, fraud, or other undue means[,]"

*id.* § 16-4423(a)(1), and whether the arbitrator was corrupt or impermissibly partial, *id.* § 16-4423(a)(2). Indeed, the D.C. Arbitration Act goes even further than the New York Convention and the Federal Arbitration Act in permitting a court to "vacate an award" on any "other reasonable ground." *Id.* § 16-4423(b). The role of the court under the D.C. Arbitration Act accordingly bears little resemblance to the straightforward enforcement procedure prescribed by Section 1650a. *See* Section III.B.1.a, *supra*.

\* \* \* \* \*

Said more simply, borrowing either (1) the statutorily forbidden Federal Arbitration Act Section 207, or (2) whatever limitations period D.C. Arbitration Act Section 16-4425 itself borrows feels like trying to jam the slipper onto one or the other of Cinderella's evil stepsisters' feet. In contrast, D.C. Code Section 15-101's money-judgment enforcement scheme slides comfortably onto Section 1650a.

## IV

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*